QUESTION:
May the Sebring Utilities Commission disregard s. 166.231(1), F. S., and incorporate or `roll in' the `fuel adjustment charge' as defined in s. 166.231(1), into the base rate on its customers' bills, or must the `fuel adjustment charge' be shown separately?
SUMMARY:
A municipally owned utility may incorporate into its base rate the `fuel adjustment charge' or a portion thereof, as defined in s.166.231(1)(b), F. S., as long as such `fuel adjustment charge' is separately stated on another part of the purchaser's bill and is not subject to the public service tax levied by the municipality.
Section 166.231(1), F. S., provides:
 (1)(a) A municipality may levy a tax on the purchase of electricity, metered or bottled gas (natural liquefied petroleum gas or manufactured), water service, telephone service, telegraph service, and cable television service. The tax shall be levied only upon purchases within the municipality and shall not exceed 10 percent of the payments received by the seller of the taxable item from the purchaser for the purchase of such service.
 (b) The tax imposed by paragraph (a) shall not be applied against may fuel adjustment charge, and such charge shall be separately stated on each bill. `Fuel adjustment charge' shall mean all increases in the cost of utility services to the ultimate consumer resulting from an increase in the cost of fuel to the utility subsequent to October 1, 1973. (Emphasis supplied.)
Section 166.231(5), F. S., then provides:
 The tax authorized hereunder shall be collected by the seller of the taxable item from the purchaser at the time of payment for such service. The seller shall remit the taxes collected to the municipality in the manner prescribed by ordinance.
 Thus, the seller of the taxable item (electricity in the case of the Sebring Utilities Commission) is required by s. 166.231 to collect the tax authorized by the section and to prepare the utilities bill in a manner that states the `fuel adjustment charge' (as defined by s. 166.231[1][b]) separately on the bill. This would, of course, logically follow because the seller of the taxable item also prepares the `bill' upon which the `fuel adjustment charge' must be separately stated.
 The Sebring Utilities Commission is a seller of electricity and therefore must comply with s. 166.231(1) and separately state the `fuel adjustment charge' upon the bill.
 The second portion of your question is whether the Sebring Utilities Commission may incorporate into its base rate a part or all of the increase in fuel costs since October 1, 1973.
 The Sebring Utilities Commission has clear authority to establish rates for utility services. This power is establish in s. 9, Ch. 23535, 1945, Laws of Florida, which states:
 Said public Utilities Commission shall have full power and exclusive authority to fix rates and charges for electricity, gas and water, or other products furnished by said Utilities Commission, . . . .
Section 12.15, Ch. 27893, 1951, Laws of Florida, further provides:
 That the Commission shall prescribe and collect reasonable rates, fees or charges for the services and facilities of such municipal utilities and shall revise such rates, fees or charges from time to time whenever necessary.
Section 166.231, F. S., does not prohibit the inclusion of increased fuel costs since October 1, 1973, into the base rate, provided that the seller separately states on the bill the `fuel adjustment charge' as defined by the statutes. Moreover, s.166.231 does not prohibit the incorporation of such increased fuel costs into the base rate, provided that the tax imposed by the municipality shall not be applied against `. . . all increases in the cost of utility services to the ultimate consumer resulting from an increase in the cost of fuel to the utility subsequent to October 1, 1973,' s. 166.231(1)(b), which is the definition of `fuel adjustment charge.' Some accounting procedure thus would necessarily have to be devised to insure that the municipal tax would not be applied to the `fuel adjustment charge.'
Prepared by: Williams C. Sherrill, Jr. Assistant Attorney General J. Elisabeth Middlebrooks Legal Research Assistant